UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| DANA REUEL KLEIN, II,<br><br>　　　　Plaintiff,<br><br>　vs.<br><br><br>DEPARTMENT OF CORRECTIONS, et al.,<br><br>　　　　Defendants. | NO. CV-10-0152-JLQ<br><br>**ORDER RE: MOTION TO DISMISS** |

BEFORE THE COURT is Defendants' Motion to Dismiss (Ct. Rec. 17) and supporting Memorandum and Declaration. Plaintiff has filed a response entitled "Opposition to Defendants' Motion for Summary Judgment" (Ct. Rec. 31), and Defendants have submitted a Reply (Ct. Rec. 32). The matter was submitted to the court without oral argument.

**I. Procedural Issue**

Defendants' Motion was supported by the declaration of Ronald Frederick and by portions of the Offender Grievance Policy. (Ct. Rec. 19 & 30). The Clerk of the Court issued Notice to Plaintiff of the Dismissal and/or Summary Judgment rule requirements. (Ct. Rec. 21). Plaintiff has interpreted this Notice as notice that the court will be treating Defendants' Motion to Dismiss as a motion for summary judgment. Plaintiff states: "On July 28, 2010, this Court properly converted defendants' Rule 12(b)(6) affirmative

ORDER - 1

defense motion to a Rule 56(b) summary judgment motion." (Ct. Rec. 31, p. 7).[1] Defendants in their Reply dispute that the Motion has been converted. (Ct. Rec. 32 p. 2). Defendants argue that evidence on the issue of exhaustion may be considered by the court on a motion to dismiss and direct the court to *Wyatt v. Terhune*, 315 F.3d 1108 (9th Cir. 2003). (Ct. Rec. 18 p. 2). Defendants are correct that the court may consider information outside the pleadings. *Id.* at 1119-20 ("In deciding a motion to dismiss for a failure to exhaust nonjudicial remedies, the court may look beyond the pleadings and decide disputed issues of fact."). Of course, this allows both Plaintiff and Defendants to submit factual information relevant to the issue of exhaustion. The distinction of whether this is a Rule 12(b) motion with information outside the pleadings considered, or a summary judgment motion is not dispositive: "[I]f the district court looks beyond the pleadings to a factual record in deciding the motion to dismiss for failure to exhaust**-a procedure closely analogous to summary judgment-**then the court must assure that [Plaintiff] has fair notice of his opportunity to develop a record." *Id.* at 1120 n.14 (emphasis supplied). Plaintiff believed the Motion was converted to one for summary judgment and therefore had notice and opportunity, and did respond accordingly.

**II. Exhaustion**

Defendants' Motion to Dismiss is based solely on the exhaustion requirement imposed by the Prison Litigation Reform Act ("PLRA" 42 U.S.C. § 1997e), and does not address the merits of the claims in the Complaint. Plaintiffs' Complaint (Ct. Rec. 2-1) does not detail what use he made of the prison grievance system at Airway Heights Correctional Center ("AHCC") nor does it contain even a conclusory allegation that he exhausted administrative remedies. However, Plaintiff did file a declaration in support of his Complaint in which he asserts that he exhausted his administrative remedies by

---

[1]Plaintiff's page numbering is confusing. For example the page just referenced is labeled as "Page-3" on the lower left side, page 10 on the center, and as page 7 on the lower right. The court will reference the page numbers on the lower right as those appear accurate.

ORDER - 2

filing an Offender Complaint and then making a "Demand for Legal Action" upon the Washington State Attorney General's Office. (Ct. Rec. 2-1). Plaintiff is not required to plead that he exhausted administrative remedies. *Jones v. Bock*, 549 U.S. 199, 215 (2007) ("inmates are not required to specially plead or demonstrate exhaustion in their complaints.") Rather, failure to exhaust under the PLRA is an affirmative defense on which Defendants have the burden of proof. *Id.*

In an attempt to meet their burden, Defendants submit the declaration of Ronald Frederick, portions of the Offender Grievance Policy, and the Offender Complaint of February 25, 2010, filed by Plaintiff. Mr. Frederick avers that he is the Grievance Program Manager ("GPM") and from 2000 to 2009 was a Grievance Coordinator. (Ct. Rec. 19). He avers that offender grievances from 2001 to present are electronically stored and that he has searched the "Liberty" database in reaching his conclusions. (Ct. Rec. 19, ¶ 9-11). In relevant part, he concludes:

> The GC [Grievance Coordinator] returned the complaint as non-grievable as Mr. Klein was grieving an alleged incident that affected another offender. I reviewed the determination by the local grievance coordinator that the complaint was not grievable. I did not reverse the decision that the complaint was not grievable. Mr. Klein did not file a Level I appeal to this grievance. Mr. Klein did not request a review of the decision of non-grievability. (Ct. Rec. 19, ¶ 12).

Based on Mr. Frederick's conclusions, Defendants move for dismissal contending that the claims in the Complaint are not properly exhausted.

Plaintiff's Offender Complaint (herein "Grievance") (Ct. Rec. 30-1) states that "offender" was forced to throw away food, "offender" would not wear the Right Living medallion, "offender" was forced into his unit and not allowed breakfast, and that an announcement was made to "all offenders" that they would not be allowed to eat if they did not participate in the Right Living program and that "corporal punishment" would be used to insure participation. The Offender Grievance Policy refers to the inmates as "offenders." (Ct. Rec. 30-1). Thus, Plaintiff's Grievance is fairly construed as alleging conduct that occurred to him--the "offender."

ORDER - 3

Defendants' response to the Grievance was to tell Plaintiff, "It is not a grievable issue," and further instruct him that "this is not your issue" and that Right Living is a "mandatory program." (Ct. Rec. 30-1). Defendants apparently contend that their reading of the Grievance was that Plaintiff complained of actions taken against another inmate (the court notes this is an unusual reading of the fairly straightforward language in the Grievance). Additionally, as Plaintiff points out, the Grievance bore his name and was signed by him. (Ct. Rec. 31, p. 9). Whatever investigation Defendants made into the matter left them with the impression that Plaintiff complained of actions taken against another inmate--which according to Plaintiff is a mistaken impression. Defendants state: "Assuming facts alleged by Plaintiff happened to him and not to another offender, he could have appealed this issue to the Grievance Program Manager." (Ct. Rec. 32 p. 3). Defendants' confusion with the nature of the Grievance (whether Plaintiff complained of actions taken against him, or against another inmate) could have been resolved in a one minute conversation with Plaintiff. This causes the court to have concerns as to the adequacy of the investigation and the seemingly inappropriate response thereto--"this is not your issue."

Plaintiff contends that once he was informed that his Grievance was a "non-grievable issue" he was no longer obligated to seek further review. (Ct. Rec. 31 p. 10). Plaintiff cites Ninth Circuit case law for the proposition that once an inmate has been reliably informed by an administrator that no remedies are available he need not further appeal. Plaintiff also argues that there was an automatic review of all complaints deemed non-grievable by the GPM, and that Mr. Frederick did not complete that required review.

The crux of the issue is whether Defendants' response that his Grievance was non-grievable and not his issue was reliable information that he need not further appeal. In *Marella v. Terhune*, 568 F.3d 1024, 1027 (9th Cir. 2009), the Circuit Court stated: "because Marella had been informed that the appeals process was unavailable to him...Marella was not required to exhaust further levels of review." <u>citing</u> *Brown v.*

ORDER - 4

*Valoff*, 422 F.3d 926, 935 (9th Cir. 2005).  The Ninth Circuit made a similar statement even more recently in *Harvey v. Jordan*, 605 F.3d 681, 685 (9th Cir. 2010) ("There is no obligation to appeal from a decision when the rejection form states that the action may not be appealed.").

Defendants' response to the Grievance does not directly state that he may not appeal, however it does inform him that his Grievance is "not a grievable issue," that his Grievance is "not [his] issue," and that the Right Living program of which he complains is "mandatory."  This response could reasonably lead Plaintiff to believe that no further appeal was available to him. See *Patterson v. Rollins*, 167 Fed.Appx. 664 (9th Cir. 2006) (reversing and remanding based on allegation in complaint that prison staff told inmate his claim was non-grievable for review in light of *Brown v. Valoff*, 422 F.3d 926 (9th Cir. 2005).

This court finds itself in some agreement with *Matthews v. Thornhill*, 2008 WL 2740323 *4 (W.D. Wash. 2008) and with Magistrate Judge Arnold's statement in his Report and Recommendation, adopted by the District Court, where he stated: "prison officials informed Plaintiff that his claims were not grievable.  It is disingenuous for Defendants to now rely on the prisoner's imputed knowledge of the grievance system and the prison's published policies regarding what issues are or are not grievable, when prison officials have already informed an inmate that a particular issue cannot be appealed to a further level because it is not a grievable issue." Defendants herein rely on excerpts from the Department of Corrections Grievance Program Manual indicating that an inmate may appeal from a decision that a complaint is not grievable. Defendants did not file this information with their initial Motion, rather Defendants submitted it with their Reply. (Ct. Rec. 33).

Additionally, a portion of the Grievance Program Manual submitted by Plaintiff states:

> Non-grievable issues through appeal
> The Grievance Program Manager/designee shall automatically review all complaints deemed not grievable by local grievance coordinators.  The Grievance

ORDER - 5

>Program Manager can reverse a decision of non-grievability and cause the local grievance coordinator to initiate a formal grievance. (Ct. Rec. 31 p. 53).

Thus, an inmate could reasonably believe that a finding that a complaint is not grievable will be automatically appealed. Mr. Frederick, the Grievance Program Manager, avers that he reviewed the finding of non-grievability on or about March 15, 2010. (Ct. Rec. 33, Supplemental Declaration at ¶ 4). Mr. Frederick then also states that Plaintiff could have appealed "to the Grievance Program Manager" and that "he did not request an appeal." (*Id.* at ¶ 7). It is difficult to understand how an inmate can be faulted for not requesting an appeal to the Grievance Program Manager, when the Grievance Program Manager is required ("shall automatically review") under the Grievance Program Manual to review the determinations. The section of the Manual concerning "non-grievable issues through appeal" informs inmates there is an automatic review, and could reasonably lead an inmate to believe that no further action was required to obtain this review.

Here, Defendants contend that the Grievance Program Manager did conduct a secondary review, yet have submitted no documentation of that review (other than Mr. Frederick's statement that he did such), or evidence that Plaintiff was informed of the outcome of the secondary review.

Defendants now argue that "the benefits of exhaustion can be realized only if the prison grievance system is given a fair opportunity to consider the grievance" (Ct. Rec. 18, p. 8 citing *Woodford v. Ngo*, 548 U.S. 81 (2006)), and that the exhaustion requirements give an agency the opportunity to correct its mistakes (Ct. Rec. 32 p. 5). Defendants appear to have done little with this "opportunity"--failing to determine if Plaintiff complained of actions taken against himself or another inmate before promptly rejecting it as "not grievable" and "not your issue."

Defendants have failed in their burden of convincing this court that Plaintiff did not properly exhaust the **available** administrative remedies. The court expresses no view on the merits of Plaintiffs' claims, as Defendants did not address the merits in their

ORDER - 6

Motion to Dismiss.  Accordingly,

**IT IS HEREBY ORDERED:**

1. Defendant's Motion to Dismiss is **DENIED**. (Ct. Rec. 17).

2. The court's Order Staying Discovery (Ct. Rec. 52) is hereby set aside. Discovery shall resume in accord with the Federal Rules of Civil Procedure.

3. The court will enter a separate order on the pending discovery motions now before the court (Ct. Rec. 36 & 39).

**IT IS SO ORDERED**.  The Clerk is hereby directed to enter this Order and furnish copies to counsel and Plaintiff.

**DATED** this 21st day of October, 2010.

                    s/ Justin L. Quackenbush
                    JUSTIN L. QUACKENBUSH
      SENIOR UNITED STATES DISTRICT JUDGE